Good morning, Your Honor. Douglas Brown for Appellant Madonna Hanes. In the letter brief of May 20th, the government suggests that this warrant was not overly broad. We think that the warrant was overly broad, and I think that's evidenced by the fact that in the trial record, the U.S. Attorney's Office conceded that many of the documents that were seized were seized beyond the scope of the warrant, despite the fact that the parties agreed and the court entered into order excluding documents prior to 1996, and after 2000, those documents were admitted. So it's our feeling that I'm not sure I understand just what argument you're making here. The fact that a document is dated differently doesn't mean that it's not relevant to a different period of time. No, true. So what is the objection? The court order was that all documents that were seized that were pre-1996 and post-2000 be excluded from evidence. That was the order. The government makes the suggestion that the order didn't exclude evidence pre-1996 or post-2000, which is true. But the difference here was that the exclusion order, which everyone agreed to, was as to the documents themselves that were seized that were beyond the scope of the warrant. Was an objection made at the time those documents were introduced? Not on a Fourth Amendment basis. So what's your complaint then? Even if the court excluded it, everybody agreed on it, somebody puts in a document, nobody objects, isn't that waived? I'd say it's plain error because all of the parties agreed that it was basically excludable. And is this a harmless error analysis? Well, that's what the, frankly, yes. The district court, we presented the same issue to the district court, and that was their finding. It seems like there is quite a bit of evidence that came in that would not meet, would not fall within the objection that you talked about. There was no objection to the documents in the time period you're talking about coming in, but you had a mountain of other evidence. It's hard to see where there's a real problem here. Well, that's true. That's true also. There was evidence that could have been excluded that was damaging. There was evidence that was properly admitted that was damaging. However, most of the evidence, as you review the file, and one of the arguments we make is cumulative error, is many of the documents, much of the evidence had to do with Catherine Haynes, not Madonna Haynes. Madonna Haynes had no obligation to file tax returns. She wasn't the one failing to file tax returns. She wasn't the one working. But there was an allegation of a conspiracy, was there not? Yeah. Doesn't that kind of wrap her in with that? It would wrap her in if, well, it would wrap her in, certainly, that she was convicted of one substantive count and one conspiracy count. But one of the arguments I think we make in the suggestion that there was prejudicial error was that all of this uncharged misconduct really related to Catherine Haynes and not to Madonna Haynes. Certainly the defense asked for a limiting instruction but never proffered one. So there was discussion about it, but it was never proffered. But the problem was that, for example, the interview with the accountant at Skosik, Madonna Haynes wasn't present. The Cots letter that had to do with the offers in compromise, she had nothing to do with that. She wasn't the one getting the advice and counseling from these so-called tax protest officers or experts. I assume all those arguments were made to the jury and the jury convicted your client anyway. I'm not sure what the point is for our purposes. Well, I guess one issue that seems to me was preserved was whether or not the uncharged misconduct should have been admitted as to it related to Madonna Haynes, and even assuming that it was admissible. What do you mean by uncharged misconduct? Well, for example, credit card fraud, skimming off a failure to pay student loans. I'm not sure that's a crime, but it could be. But certainly there was evidence admitted that they were the defendants. Wasn't that an impeachment issue, though? Wasn't there some claim of integrity and so on, and there was impeachment testimony brought in? Do I misremember that? No, neither defendant testified, so I don't really think there could have been anything. I'm not sure about the defendants, but there was some claim of integrity, and this was an impeachment. No, that I don't think. Is that incorrect? Yeah, I think that is incorrect. I don't think anybody would have taken the position on credibility in this case. But at any rate, I think I said what I could say in the briefs, and in the absence of any questions, I submit it. Thank you. Thank you. Mr. Chairman, the government. May it please the Court, John Owens for the United States. I'd like to begin first, actually, with the 404B issue to clarify a couple points on that matter. At trial, the 404B evidence was introduced that showed that both defendants were involved in defrauding credit card companies, sending very similar correspondence to the credit card companies that they were sending to the IRS. Additionally, both defendants were involved in sending the correspondence to the student loan companies, very similar to the correspondence sent to the IRS. And both defendants were involved in that process, and we put in the excerpt of the record. Was this to help prove the conspiracy? For several reasons, Your Honor. One of the reasons was to prove intent. One of the defenses we have to deal with in tax cases is the cheap defense, the good faith defense. Well, if someone had a unique belief that for IRS purposes, they didn't have to pay taxes, well, surely you would not see that when it comes to any other bill. It must be something unique to the IRS. What we proved at trial is that the defendants simply didn't like paying bills, whether it be credit card bills, student loan bills, or bills to the IRS. It had nothing to do with some belief that they had some sort of special status with the IRS. It's just they didn't like to pay bills. And both of them participated in that process. So it actually, in the government's view, it would have been error for Judge Whalen to have issued a limiting instruction in this case, because both defendants were equally involved in it. In terms of the particularity of the warrant, we briefed that issue. We believe it was sufficiently particular under Ninth Circuit law, and certainly the SDI futures health decision, which was actually just amended yesterday, in a way that actually helps the government even more. I didn't have time to do a 28-J on the train ride up. More current than I am. Just yesterday it came out, and actually in that case, and the one that came out yesterday, they talk about the Bridges case. That's the one case that the defense counsel in this case cites about alleging problems with the warrant. SDI futures in the amended opinion actually has a footnote dealing with Bridges and talks about really the limited scope of Bridges. So we believe that the warrant was sufficiently particular. Even if it wasn't, the underlying affidavit, which was very detailed, was incorporated. And then finally, any error in this case was harmless due to the overwhelming evidence, especially in light of the fact that Madonna Haynes herself was sending this kind of correspondence saying I'm not a U.S. citizen to the IRS. So I think the parties have briefed the issues. Unless the court has any questions at this time, we would be ready to submit. I've got a question that may not have a specific bearing on the outcome of this particular case. It's more a curiosity question. This started out looking as though it might just be a civil enforcement and ends up as a criminal case. What happens? How is that decision made, and why did this end up as a criminal case instead of a civil case? Sure. What will happen in cases is that the IRS has their civil teams. They're constantly out looking for things, and there are I don't know how many thousands of cases. And when a revenue agent gets involved, will look at it more and more and more. For certain cases, a very small percentage actually, they'll look at it and say, hey, I think this is criminal. I think here that this was not simply someone who didn't understand the tax law. I think this is someone who's actively evading. In this case, the witness who testified at trial was Jay Higgins. And Sir Higgins then makes a referral to the CID. It's the Criminal Investigation Division. So that's the process. But you get a lot of cases where people don't file for five years and finally come in and say, I guess I better start filing. Those are often or usually civil cases. Sometimes they are, and sometimes they're not. It does depend. And then lastly, I would just note totally aside from this case, I suffered deja vu today. About seven years ago, I argued the Kincaid case. As the young AUSA who came in here with Judge Reinhart was there, Judge O'Scanlan was there, and Judge Paez was there. Did they let you say anything, or did they dominate the discussion? We lost the first time around, then en banc, the government prevailed. So I did not argue the en banc. I got to take it on the show. You had a very sympathetic initial panel. So what should we do in the case we heard this morning? Well, that's what I was going to say. Affirm. Thank you very much. Thank you both. Did you want to say anything last night? No. Okay. Thank you very much. United States v. Hanes, for your decision. Thank you for your patience. It's been a long morning. We're now in adjournment for the day. All rise. This session stands adjourned.
judges: Fletcher W. , Clifton, Smith M.